The Honorable John Bynum Prosecuting Attorney Fifth Judicial District 110 South Fulton Street Clarksville, AR 72830
Dear Mr. Bynum:
This is in response to Deputy Prosecuting Attorney Bruce R. Wilson's request for an opinion concerning the legality of having poll workers at an election operate on a split shift. His specific question is as follows:
 Could one set of workers work the polls from 8:00 a.m. until 6:00 p.m. and then be replaced by a second shift of workers who would work from 6:00 p.m. until the polls closed and the ballots counted?
It is my opinion that the answer to this question is in all likelihood "no," although the state election laws do not squarely address the issue. The appointment of election officers is addressed in A.C.A. § 7-4-107 (1987) in pertinent part as follows:
 The county board of election commissioners, or the county committee in a primary election, shall appoint the requisite number of judges and clerks at each ballot box to ensure that, based upon the votes in the immediately preceding comparable election, there is a sufficient number of judges and clerks at each ballot box so that no set of judges and clerks will count more than three hundred (300) ballots or more than two hundred (200) absentee ballots following the close of the polls. In any event, there shall be at least one (1) set of three (3) judges and two (2) clerks for each voting precinct.
A.C.A. § 7-4-107(a) (1987).
 Two (2) judges and one (1) clerk for each set of judges and clerks for each ballot box in each precinct shall be chosen and appointed by two (2) members of the county board of election commissioners representing the majority party and one (1) judge and one (1) clerk for each set of judges and clerks for each ballot box in each precinct shall be chosen and appointed by the member of the county board of election commissioners representing the minority party.
A.C.A. § 7-4-107(c) (1987).
 In any county using voting machines, the county board of election commissioners shall appoint one (1) judge and one (1) clerk to represent each the majority and minority parties at each polling place and to supervise and conduct the election. . . . Additional sets of judges and clerks may be appointed at each polling place if the board of election commissioners determines they are necessary.
A.C.A. § 7-4-107(d) (1987). See also A.C.A. §§ 7-7-302 and 7-7-503 (1987) (primary elections).
One might argue that while the required minimum number of election officers must clearly be met, there is no mandate that the same set of workers serve from the opening until the close of the polls. It is true that the legislature has not expressed aclear mandate in this regard. My review of the election laws as a whole, however, compels me to conclude that a so-called "split shift" arrangement was not contemplated, and would not withstand judicial review.
The fact that the election officers are to be paid a minimum of $7.50 "for holding an election" offers an initial suggestion that the legislature intended for each officer to work the entire election. Of perhaps greater significance, however, are the various provisions governing the certification and attestation of voter lists and tallies. There appears to be no procedure for interrupting the voting process in order to certify an interim count or a voter list before the polls are closed. See A.C.A. §§ 7-5-314(b) (1987) ("[w]hen the polls close," the election clerks shall "total the number of voters on the voter lists, and such lists shall be certified by the election judges and attested by the election clerks"); 7-5-315(3) (Cum. Supp. 1991) ("In counting the ballots, the ballot box shall be opened, and the ballots counted by counting each ballot in turn or by counting offices and issues. The judges of the election must witness the counting of the ballots, and the two (2) clerks shall keep separate tally lists of the votes cast for each candidate or issue on the ballot"); 7-5-315(5) (Cum. Supp. 1991) ("Upon the close of the polls, the judges and clerks shall immediately certify and attest the list of voters and continue the count to completion"); 7-5-315(6) (Cum. Supp. 1991) ("After the count is completed, the judges and clerks shall make note of the certificates of election. . . ."); 7-5-527(a) and (d) (1987) (regarding exposing the count, and judges and clerks signing tabulation blanks or machine return record after polls are closed and machines are locked); 7-5-613 (1987) (judges and clerks to secure marking devices against further voting, open the vote card box, count write-in votes and prepare a return of the votes "as soon as the polls are closed"); 7-5-615 (1987) (returns shall be open to the public "upon completion of the count"). See also
A.C.A § 7-7-308 (1987) (regarding primary elections).
The absence of authority for counting votes or processing voter lists before the closing of the polls compels the conclusion that a split shift arrangement would result in the certification and attestation of voter lists and tallies by election officials other than those who actually witnessed the votes. This practice would, in my opinion, subject the results to a legal challenge.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh